## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN REFINING GROUP, INC.,

Petitioner,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

Respondent.

Case No. 23-1250

## PETITION FOR REVIEW

Pursuant to Section 307(b) of the Clean Air Act, 42 U.S.C. § 7607(b), and Federal Rule of Appellate Procedure 15(a), Petitioner American Refining Group, Inc. ("ARG") petitions this Court for review of the action of the Administrator of the United States Environmental Protection Agency ("EPA") issued on July 14, 2023 denying ARG's petition for small refinery hardship relief from the requirements of the Renewable Fuel Standard ("RFS") for the 2021 and 2022 compliance years and titled "July 2023 Denial of Petitions for RFS Small Refinery Exemptions" (attached as Exhibit A). Notice of this action was published in the Federal Register on July 20, 2023. 88 Fed. Reg. 46795 (July 20, 2023) (attached as Exhibit B). This Petition is timely filed within 60 days of the notice published in the Federal Register. *See* 42 U.S.C. § 7607(b)(1).

This is a "protective petition" for review filed out of an abundance of caution to preserve Petitioner's rights. Petitioner believes the denial of

its hardship petition is a "locally . . . applicable" agency action that must be challenged in the regional circuit in which Petitioner's refinery is located. 42 U.S.C. § 7607(b)(1). Thus, Petitioner has filed a petition for review of the same agency action in the United States Courts of Appeals for the Third Circuit. However, EPA stated in its Federal Register notice that "petitions for judicial review of this action must be filed in the United States Court of Appeals for the District of Columbia." 88 Fed. Reg. at 46796.

Accordingly, Petitioner is filing this "protective petition" for review in this Court. *See N.Y. Republican State Comm. v. S.E.C.*, 799 F.3d 1126, 1134–35 (D.C. Cir. 2015) (instructing petitioners to file "a protective petition" if "any doubt as to the proper forum exists").

The Corporate Disclosure Statement required by Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1 is attached as Exhibit C.

Dated:  September 12, 2023          Respectfully submitted,

*s/ Jonathan G. Hardin*
_____
Jonathan G. Hardin
Alexandra Magill Bromer
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C.  20005-3960
Telephone:  202.654.6297
Facsimile:  202.654.6211
JHardin@perkinscoie.com
ABromer@perkinscoie.com

Michael R. Huston*
Karl J. Worsham
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85102-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
MHuston@perkinscoie.com
KWorsham@perkinscoie.com
* *Admitted only in Washington, D.C.*

Attorneys for American Refining Group, Inc.

# EXHIBIT A

# July 2023 Denial of Petitions for RFS Small Refinery Exemptions



United States
Environmental Protection
Agency

# July 2023 Denial of Petitions
# for RFS Small Refinery Exemptions

United States Environmental Protection Agency



**EPA**  United States
Environmental Protection
Agency

EPA-420-R-23-007
July 2023

# Table of Contents

I.    Executive Summary ................................................................................................ 1

II.    Background ............................................................................................................ 1

III.    EPA Evaluation .................................................................................................... 2

    A.    Two Refineries Ineligible to Petition for Exemptions ................................. 2

    B.    SRE Petition Requirements ......................................................................... 3

    C.    DOE Consultation ....................................................................................... 4

    D.    DEH Must Be Caused by RFS Compliance ................................................ 6

IV.    EPA's Response to the Final GAO Report ........................................................... 7

V.    Denial of Petitions and Judicial Review ............................................................... 9

    Appendix A – Updated Market Analysis ............................................................... 12

# I.     Executive Summary

In this action, the Environmental Protection Agency ("EPA" or "the Agency") is acting on 26 individual small refinery exemption ("SRE") petitions from 15 small refinery petitioners seeking exemption from their Renewable Fuel Standard ("RFS") obligations for compliance years 2016–2018 and 2021–2023.[1] In consultation with the Department of Energy ("DOE"), EPA reviewed all the information submitted by each individual small refinery in support of its petition or petitions. After careful consideration of all the information submitted by the small refineries, EPA is denying all of the petitions because the individual small refineries have failed to demonstrate that compliance with their RFS obligations would cause disproportionate economic hardship ("DEH"). This final action denies 26 SRE petitions (hereinafter the "July 2023 SRE Denial Action").

The decision to deny these 26 petitions is based on the following reasons, including the analysis found in prior EPA actions denying SRE petitions in April 2022[2] and June 2022[3] (collectively the "2022 SRE Denial Actions") and any new information submitted by the small refineries for the specific petitions addressed in this action.

# II.     Background

In the 2022 SRE Denial Actions, EPA denied 105 petitions from 39 small refineries seeking exemptions from their RFS obligations for the 2016–2021 compliance years. These decisions have been challenged in different courts and those challenges are currently pending.[4] In the 2022 SRE Denial Actions, we described the RFS program and explained relevant background information, including the Renewable Identification Number ("RIN") compliance program and the market dynamics of the RIN system as well as the SRE provisions.[5] We explained EPA's revised interpretation of the SRE statutory provisions, including DEH, in light of the U.S. Court of Appeals for the Tenth Circuit's decision in *Renewable Fuels Association et al. v. EPA*, 948 F.3d 1206 (10th Cir. 2020) ("*RFA*").[6] This July 2023 SRE Denial Action relies on the same approach and the same analyses described in the 2022 SRE Denial Actions in denying 26 additional SRE petitions from 15 small refineries for compliance years 2016–2018 and 2021–2023. This action therefore incorporates by reference the explanation and analyses in the 2022 SRE Denial Actions, including both the non-confidential and confidential refinery-

---

[1] EPA is acting on a 2023 SRE petition prior to the conclusion of the 2023 compliance year because that small refinery has indicated its intent to initiate litigation against the Agency if EPA does not act on this petition.

[2] "April 2022 Denial of Petitions for RFS Small Refinery Exemptions," EPA-420-R-22-006, April 2022 ("April 2022 SRE Denial Action"), https://www.epa.gov/renewable-fuel-standard-program/april-2022-denial-petitions-rfs-small-refinery-exemptions.

[3] "June 2022 Denial of Petitions for RFS Small Refinery Exemptions," EPA-HQ-OAR-2021-0556, June 2022 ("June 2022 SRE Denial Action"), https://www.epa.gov/renewable-fuel-standard-program/june-2022-denial-petitions-rfs-small-refinery-exemptions.

[4] *Sinclair Wyoming Refining Co. LLC, et al. v. EPA*, No. 22-1073 (and consolidated cases) (D.C. Cir.); *Calumet Shreveport Refining, LLC et al. v. EPA*, No. 22-60266 (and consolidated cases) (5th Cir.); and *Hunt Refining Co. v. EPA*, No. 22-11617 (and consolidated case) (11th Cir.). Decisions in these cases will likely be dispositive to most issues that would be raised in any challenges to this final action.

[5] 2022 SRE Denial Actions, Section II.

[6] 2022 SRE Denial Actions, Section III.

specific appendices to those actions. EPA also carefully evaluated any relevant new information, including those submitted by small refineries, but concluded that the new information does not warrant a different conclusion.

## III.    EPA Evaluation

This section describes EPA's evaluation of the 26 SRE petitions for compliance years 2016–2018 and 2021–2023 that EPA is addressing in this action. EPA first evaluated the petitions to determine whether each refinery is eligible to petition as a small refinery under the statutory SRE provisions and determined that two refineries are not eligible. EPA then evaluated all petitions using the same approach applied in the 2022 SRE Denial Actions regarding the required demonstration of DEH.[7] In general, the small refineries provided little new information and instead repeated the information included in the prior petitions that EPA denied with the 2022 SRE Denial Actions.[8] To the extent any small refinery did submit new information, EPA has addressed that information in the 2023 Consultation Memo (discussed in Section III.C of this action) and in the confidential refinery-specific appendices to this action. In particular, a number of small refineries cited as support a November 2022 report from the Government Accountability Office ("GAO").[9] EPA provided its response to a draft version of that report in October 2022[10] and issued its final analysis of the price of RINs paid by small refineries in December 2022.[11] On May 2, 2023, EPA issued its final response to the Final GAO Report.[12] Section IV of this action addresses the Final GAO Report in detail in response to those small refineries that raised it in their petitions.

### A.    Two Refineries Ineligible to Petition for Exemptions

EPA received two SRE petitions for each of the 2018, 2019 and 2020 compliance years from two refineries; EPA determined those two refineries to be ineligible to petition for an exemption under Clean Air Act (CAA) section 211(*o*)(9) in the 2022 SRE Denial Actions.[13] In this final action, EPA is denying three 2021 and 2022 SRE petitions from these same two refineries, not only because they have failed to demonstrate DEH, but also on alternative and independent grounds: EPA here determines that both refineries remain ineligible to petition for SREs. These two refineries submitted refinery-specific comments under claims of confidentiality

---

[7] 2022 SRE Denial Actions, Section IV.

[8] In instances where a small refinery resubmitted comments it had previously submitted in response to EPA's "Proposed RFS Small Refinery Exemption Decision," EPA-420-D-21-001, December 2021 ("Proposed Denial"), EPA relied on its previous evaluation of and responses to those comments as presented in the 2022 SRE Denial Actions.

[9] "Renewable Fuel Standard: Actions Needed to Improve Decision-Making in the Small Refinery Exemption Program," GAO-23-104273 and GAO 23-105801, November 2022 ("Final Report" or "Final GAO Report").

[10] Letter from Joseph Goffman, EPA, to Frank Rusco, GAO, October 13, 2022 ("EPA Comment Letter"). The EPA Comment Letter is included as Appendix IV in the Final GAO Report.

[11] "An Analysis of the Price of Renewable Identification Numbers (RINs) and Small Refineries," EPA-420-R-22-038, December 2022 ("EPA RIN Price Analysis").

[12] EPA Response to Final GAO SRE Report, May 2, 2023 ("EPA Final GAO Response"), available at https://www.epa.gov/renewable-fuel-standard-program/epa-analysis-price-rins-and-small-refineries; *See, e.g.*, https://www.epa.gov/system/files/documents/2023-05/EPA-Response-to-Final-GAO-SRE-Report-Letter-to-House-and-Senate-Appropriations-Committees.pdf.

[13] 2022 SRE Denial Actions, Section IV.A.

specifically addressing their eligibility to submit SRE petitions; EPA addresses these refinery-specific eligibility comments in confidential, refinery-specific appendices to this action.

We have again determined that these two refineries are ineligible to petition for 2021 and 2022 SREs because they did not receive the initial blanket exemption from the RFS program under CAA section 211(*o*)(9)(A). In making this determination, we are applying the same interpretation taken in the 2022 SRE Denial Actions: that the SRE statutory provisions dictate that only small refineries that actually received the initial blanket exemption are eligible to petition for an extension of that initial exemption.[14] This ineligibility determination provides an alternative and independent basis to support EPA's conclusion that these small refineries should not be granted an exemption from their 2021 and 2022 RFS obligations, in addition to EPA's conclusion that their petitions do not demonstrate that they experience DEH caused by RFS compliance.

## B.    *SRE Petition Requirements*

The applicable SRE petition requirements are contained in EPA's regulations at 40 CFR 80.1441(e)(2). As explained in the 2022 SRE Denial Actions, the petitioning small refinery has the obligation to demonstrate in its petition that its DEH is caused by compliance with its RFS obligations.[15] In this action, EPA considered 26 SRE petitions for compliance years 2016–2018 and 2021–2023; small refineries claim that each petition contains the small refinery's demonstration of DEH caused by RFS compliance. EPA evaluated the information submitted in each petition—in consultation with DOE as discussed in more detail below—to determine if the petition satisfied the regulatory criteria and met the statutory requirement to demonstrate DEH based on EPA's interpretation of the SRE provisions of the CAA as described in the 2022 SRE Denial Actions.

In comments on EPA's Proposed Denial, small refineries claimed that EPA's action would be improper because it would "retroactively" apply the Agency's interpretation of the SRE statutory provisions and the *RFA* decision to petitions that had already been submitted, and further that they lacked sufficient notice of that interpretation. As explained in the 2022 SRE Denial Actions, and for all the reasons articulated in EPA's recently filed response briefs in the challenges to the 2022 SRE Denial Actions, incorporated herein, EPA disagrees.[16] The action is not retroactive because EPA applied its revised approach to then-pending petitions, which did not take away or impair "vested rights acquired under existing laws" or create a "new obligation…in respect to transactions…already past," but merely confirmed the status quo that petitioning small refineries comply with *preexisting* RFS obligations; therefore, no rights had vested in any of the small refineries' uncompleted transactions (e.g., their pending petitions).[17] These RFS obligations were previously imposed by Congress and implemented through EPA

---

[14] 2022 SRE Denial Actions, Section IV.A.

[15] 2022 SRE Denial Actions, Section IV.D.

[16] 2022 SRE Denial Actions, Appendix B, Section I.3; EPA's Second Corrected Response Brief, pp. 29-39, Doc. No. 336-2 (Restricted), June 22, 2023, *Calumet Shreveport Refining, LLC et al. v. EPA*, No. 22-60266 (and consolidated cases) (5th Cir.) (waiting for court to docket redacted version of brief filed June 22, 2023); and EPA's Response Brief, pp. 22-33, Doc. No. 77, April 20, 2023, *Hunt Refining Co. v. EPA*, No. 22-11617 (and consolidated case) (11th Cir.) (collectively, "EPA's Response Briefs").

[17] *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994); 42 U.S.C. § 7545(*o*)(3)(B)(ii)(I); 40 CFR 80.1406.

regulations wholly separate from the SRE petition process. Moreover, Congress delegated resolution of SRE petitions to EPA "at any time,"[18] thereby expressly authorizing any purported retroactive effect, and EPA reasonably adjudicated the SRE petitions by applying the proper statutory interpretation to the facts at hand, making any purported retroactive effect permissible.[19] And it is clear that the petitioning small refineries can have no reasonable reliance interest with respect to EPA's prior approach. The small refineries were well aware of EPA's proposed revised approach as was evident in their numerous supplements to their petitions and comments submitted on the Proposed Denial, as well as their active participation in meetings and related litigation.[20] Additionally, EPA has repeatedly stated that small refineries should expect to comply with their RFS obligations unless and until an exemption is received.[21] As such, this action does not disrupt any reasonable expectations the small refineries could have had regarding the prior approach. Particularly in light of the 2022 SRE Denial Actions, the only reasonable expectation was that compliance with the RFS program would continue to be required.

Moreover, here, the small refineries submitted the 2021–2023 SRE petitions at issue *after* EPA issued the 2022 SRE Denial Actions.[22] All of these small refineries had petitions for other compliance years that were denied in the 2022 SRE Denial Actions, meaning they are clearly aware of the revised approach EPA is now taking when evaluating SRE petitions, EPA's supporting analyses, and the fact that EPA intends to continue to apply its revised approach in future analysis of SRE petitions.[23] The small refineries are also aware of the types of information they would need to submit in their petitions to demonstrate their DEH is caused by their RFS compliance.[24] Nonetheless, as noted above, the SRE petitions addressed in this action contain little new information, but instead simply repeat the small refineries' past arguments and rely on the same information EPA previously evaluated.

## C.    DOE Consultation

As more fully described in the 2023 Consultation Memo,[25] EPA consulted with DOE to evaluate each of the 26 SRE petitions, consistent with the revised approach to DEH that EPA implemented with the 2022 SRE Denial Actions.[26] Technical, legal, and policy staff for EPA and DOE met on at least 14 separate occasions to discuss various aspects of DEH and the SRE petitions.

---

[18] CAA section 211(*o*)(9)(B)(i), (ii).

[19] *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 159 (D.C. Cir. 2010).

[20] 2022 SRE Denial Actions, Section II.D.; EPA's Response Briefs, Section II. Factual and Procedural Background.

[21] See, e.g., "Financial and Other Information to Be Submitted with 2016 RFS Small Refinery Hardship Exemption Requests," December 6, 2016, p.3 ("[p]etitioning small refineries should *always presume* that they are subject to the requirements of the RFS program and include RFS compliance in their overall planning.") (emphasis added), available at https://www.epa.gov/sites/default/files/2016-12/documents/rfs-small-refinery-2016-12-06.pdf.

[22] The 2016–2018 SRE petitions at issue were submitted prior to the 2022 SRE Denial Actions and are addressed in the confidential refinery-specific appendices.

[23] 2022 SRE Denial Actions, Section IV.D.1.a.

[24] 2022 SRE Denial Actions, Appendix B, Section I.8.

[25] "Consultation with the Department of Energy under Clean Air Act Section 211(o)(9)(B)(ii) Regarding the Petitions Addressed in the July 2023 SRE Denial Action" (the "2023 Consultation Memo").

[26] 2022 SRE Denial Actions, Section IV.C.

For this action, EPA shared the 26 SRE petitions and all supporting information with DOE. The agencies reviewed the petitions and all the supporting information, using a consultation approach consistent with that adopted in the 2022 SRE Denial Actions, to determine if any of the information indicated that the petitioning small refinery faces a higher cost of RFS compliance relative to the industry average (disproportionate cost of compliance). If the information demonstrated a small refinery experiences a disproportionate cost of compliance, the agencies then considered whether that disproportionate cost of compliance constitutes DEH. Where petitioning small refineries again submitted information they had previously provided to support their prior-year petitions, the agencies did not re-evaluate that information since they had previously reviewed and considered that information when acting on prior petitions in the 2022 SRE Denial Actions and had determined that the information does not demonstrate a disproportionate cost of compliance for those small refineries. The agencies did, however, carefully evaluate all the new information the petitioning small refineries provided to support the petitions addressed in this action to determine if any individual petitioning small refinery may face a disproportionate cost of compliance when compared to the industry average. In particular, the agencies looked for:

1. Evidence that a petitioning small refinery paid above-market prices for RINs or discounted its blended fuel price by more than the proportional market price of a RIN.
2. Evidence that a petitioning small refinery was unable to pass its RIN costs on to the market because it received a price for its gasoline or diesel below that for a full passthrough of its RIN costs for reasons due to the RFS. A petitioning small refinery cannot simply assert—without supporting information—that it received lower prices than those in other markets since the difference may be due to other non-RFS factors such as transportation costs.

The agencies' review did not identify any information in any of the 26 SRE petitions that indicated that any petitioning small refinery faces a disproportionate cost of RFS compliance when compared to the industry average.

We note that while many of the petitioning small refineries submitted information containing "self-scored" metrics using the matrix from the DOE 2011 Study,[27] during the agencies' review of all the information submitted (e.g., the PI-588 survey form, small refinery financial statements, and the RFS cost compliance spreadsheets), EPA did not request that DOE use the information to prepare a matrix from the DOE 2011 Study. The DOE 2011 Study contemplated a scenario where refineries that blend renewable fuels and separate RINs would have a lower cost of compliance. The "disproportionate structural impact" portion of the matrix was designed, in part, to identify which refineries were less likely to be able to blend renewable fuels due to a lack of resources or support for renewable fuel blending in the markets where they competed.[28] It was those refineries that the DOE 2011 Study presumed would have to buy RINs and would therefore potentially face a higher cost of RFS compliance. None of the petitioning small refineries provided information demonstrating such a difference in their RFS compliance

---

[27] *Small Refinery Exemption Study, An Investigation into Disproportionate Economic Hardship*, Office of Policy and International Affairs, U.S. Department of Energy, March 2011 ("DOE 2011 Study"), available at https://www.epa.gov/sites/default/files/2016-12/documents/small-refinery-exempt-study.pdf.
[28] DOE 2011 Study, pp. 33-35.

costs. Accordingly, EPA determined there was no purpose to DOE scoring a matrix designed to address a scenario that has not materialized.

DOE also confirms that its DOE 2011 Study did not evaluate the degree to which refineries would pass through the cost of compliance in the products they sold, and hence, did not evaluate empirical data or any other information pertaining to RIN cost passthrough by refineries.

EPA and DOE additionally considered the submissions made by small refineries regarding the Final GAO Report to determine if any small refinery demonstrated that, in acquiring separated RINs, it faced a disproportionate cost of compliance. EPA and DOE found that no small refinery offered evidence of such disproportionate costs in their petition.

### D.    DEH Must Be Caused by RFS Compliance

In the 2022 SRE Denial Actions, EPA explained its interpretation of the statutory provisions at CAA section 211($o$)(9) governing EPA's authority to grant SREs. Specifically, EPA explained that its authority to grant an SRE "for the reason of [DEH]" requires that the hardship is caused by RFS compliance. As explained in those actions, this interpretation aligns with the statutory text as well as with the structure and purpose of the SRE provisions and the RFS program.[29]

EPA bases this action on the same analyses described in the 2022 SRE Denial Actions.[30] EPA explained in the 2022 SRE Denial Actions that "in this final action and going forward, we will require that petitioning small refineries demonstrate that DEH is caused by RFS compliance" and provided abundant explanation and examples to enable small refineries to understand what would be needed to make such a demonstration for future petitions.[31] However, the 26 SRE petitions addressed in this action generally were not supported by new information or arguments. Instead, small refineries merely restated their disagreement with EPA's analyses presented in the 2022 SRE Denial Actions and claimed that EPA had failed to consider the small refineries' specific evidence of their own DEH. The remainder of this section summarizes EPA's approach to evaluating DEH as applied in the 2022 SRE Denial Actions and further explains how that approach is being applied here to deny the 26 SRE petitions covered by this action.

In the 2022 SRE Denial Actions, EPA explained that under its interpretation of the statute, EPA only has the authority to grant SREs when a small refinery's DEH is caused by RFS compliance, consistent with the Tenth Circuit's holding in *RFA*.[32] EPA also explained the RIN discount and RIN cost passthrough principles and their implications for EPA's authority to grant SREs based on the requisite finding of DEH, consistent with a separate holding in *RFA*.[33] EPA's interpretation of the statute and its assessment of RIN market dynamics, the economic principles of RIN discount and RIN cost passthrough, and the impacts on different market participants as

---

[29] 2022 SRE Denial Actions, Section IV.D.1.
[30] 2022 SRE Denial Actions, Section IV.D.
[31] 2022 SRE Denial Actions, Section IV.D.1.a.
[32] 2022 SRE Denial Actions, Section IV.D.1.
[33] 2022 SRE Denial Actions, Section IV.D.2.

described in the 2022 SRE Denial Actions apply to each of the individual SRE petitions evaluated in this action. No small refinery provided any information to show that either the RIN cost passthrough or RIN discount principles do not apply for the SRE petitions addressed in this action. EPA is therefore denying these petitions for all the same reasons explained in the 2022 SRE Denial Actions since no small refinery has demonstrated that it suffers DEH caused by its RFS compliance.

Additionally, EPA has updated part of its analysis regarding RIN cost passthrough to include data from compliance years 2021 and 2022. The results of this updated analysis—which compared historical prices for obligated and non-obligated fuels—are shown in Appendix A, and again illustrates that RIN costs are passed through in the prices of the obligated fuel.

## IV. EPA's Response to the Final GAO Report

In November 2022, GAO published its Final Report, which reviewed EPA's implementation of the SRE program. The Final GAO Report did not directly assess whether small refineries experience DEH.[34] In spite of that fact, many small refineries attached the Final GAO Report to their SRE petitions, claiming it provides evidence that they face higher costs of RFS compliance due to a purported difference in the price they must pay to acquire RINs, and that they therefore will face DEH. EPA disagrees. EPA and DOE provided comments on a September 2022 draft version ("Draft Report") of the Final GAO Report, and these comments are available in the Final GAO Report, Appendices IV (EPA Comment Letter) and V. As explained below, the Final GAO Report fails to address EPA's comments on and concerns with the Draft Report raised in the EPA Comment Letter. Following issuance of the Final GAO Report, in December 2022, EPA completed the EPA RIN Price Analysis—an additional evaluation of the price of RINs paid by small refineries—and provided GAO with a copy of this analysis. On May 2, 2023, EPA issued its Final GAO Response to GAO and Congress.

Small refineries that submitted the Final GAO Report as evidence of their DEH did not provide any accompanying explanation or supporting information demonstrating that they in fact pay a cost above the posted market prices when they buy RINs. Instead, these small refineries simply attached the Final GAO Report to their petitions without additional explanation or supporting information. For example, the petitioning small refineries did not include any explanation regarding how the Final GAO Report supports their assertion that they face a higher cost to acquire RINs when compared to larger refineries. Nor did these small refineries attempt to explain why paying a slightly higher price for RINs (if true) would so significantly impact their operations as to constitute DEH. It is the obligation of petitioning small refineries to develop their arguments and show how the information they are presenting supports their petition. The petitioning small refineries have failed to present those arguments here and therefore have failed to explain how the Final GAO Report demonstrates they experience DEH caused by their RFS compliance.

---

[34] "EPA expressed concerns that our analysis did not directly assess whether small refineries experience disproportionate economic hardship. Given the information available to us at the time, this is not what we analyzed." Final GAO Report, p. 29.

EPA has reviewed the Final GAO Report and strongly disagrees with its primary analysis, conclusions, and recommendations with respect to the SRE program. The Final GAO Report analysis retains several of the fundamental flaws EPA previously addressed in the EPA Comment Letter on the Draft Report. For example, GAO did not actually analyze "small refineries" as defined by the CAA in its analysis. And GAO again reached the same flawed conclusions when the results of its RIN price analysis changed from small refineries allegedly paying 39% more to only allegedly paying 2.4% more for RINs. EPA's own analysis corrected these errors and suggests the resulting price differential could simply be only 0.5% (0.6¢), and that difference "could simply reflect noise in the data rather than an actual characteristic of the RIN market."[35] Further, GAO misunderstands and does not address the fact that historically small refineries have not claimed they paid more than the market price for RINs, and in the limited instances when individual small refineries made those claims, EPA fully evaluated and responded to them. Lastly, GAO does not properly account for the process that EPA undertakes to evaluate SRE petitions, which often includes the very market data GAO suggests is missing.

In its Final Report, GAO asserts that EPA does not have "quality information" to evaluate SRE petitions.[36] The Final GAO Report also asserts that EPA's conclusion regarding RIN cost passthrough relied on "two assumptions that the agency has not fully assessed" when making SRE decisions: (1) "EPA assumed that all parties pay and receive one price for RINs" and (2) "EPA assumed that the studies it reviewed regarding RIN pass-through could be relied on to draw conclusions about additional markets that were not examined in those studies" (e.g., EPA must "fully examin[e] and document[]…RIN [cost] pass-through in all relevant fuel markets").[37] GAO concludes that "EPA will continue to make decisions on small refinery exemptions without quality information" and "risks inappropriately denying valid exemption petitions" if it does not reassess these assumptions.[38]

EPA rejects these and other statements in the Final GAO Report, as EPA considered extensive data and other information and explained the basis for the 2022 SRE Denial Actions. Moreover, EPA attempted several times to explain the discrepancies between EPA's and GAO's respective analyses during the Agency's engagement with GAO on this audit, but those explanations were not taken into account in the Final GAO Report. When GAO provided the Draft Report to EPA, containing many of the same erroneous conclusions as are now found in the Final GAO Report, EPA expressed its disagreement and began its own analysis to remedy the flaws with the Draft Report. EPA further explained its reasons for its disagreement in the EPA Comment Letter, which included preliminary results of EPA's own RIN price analysis. Since publication of the Final GAO Report, EPA concluded and published its final analysis in the EPA RIN Price Analysis.

EPA's criticisms and concerns regarding several fundamental flaws in the Final GAO Report are thoroughly explained in the EPA Final GAO Response. In particular, EPA's response to Recommendation 1 describes EPA's suggested changes in the EPA Comment Letter to GAO's analysis in the Draft Report, and how GAO failed to act on or incorporate those comments into

---

[35] Final GAO Response, pg. 4.
[36] Final GAO Report, pg. 9.
[37] *Id.* at 10, 13.
[38] *Id*. at 13.

its Final Report.[39] As thoroughly explained in the EPA Final GAO Response, GAO's analysis in its Final Report ultimately does not support GAO's conclusion that small refineries pay more for RINs than large refineries. Consistent with the EPA Final GAO Response, EPA continues to disagree with the Final GAO Report, and we do not believe the Final GAO Report provides persuasive evidence of DEH in support of any of the SRE petitions before us. In reaching this conclusion, EPA relies upon the voluminous analysis we have conducted on this issue and our longstanding experience administering the SRE program pursuant to Congress's delegation of authority to EPA in CAA section 211($o$)(9). GAO lacks any similar delegation of authority and has no expertise in or experience from implementing and administering the SRE program.

## V.    Denial of Petitions and Judicial Review

Section 211($o$)(9)(B) of the CAA gives EPA the authority to grant an SRE petition only when a small refinery demonstrates DEH caused by its compliance with the RFS program. Based on our detailed evaluation, careful consideration of all the available information, consultation with DOE, and consideration of the DOE Study and other economic factors, EPA finds that none of the 26 pending SRE petitions for the 2016–2018 and 2021–2023 compliance years have demonstrated DEH caused by their RFS obligations.

As explained in the 2022 SRE Denial Actions, the market-based design of the RFS program and the RIN-based compliance system have equalized the cost of compliance among all market participants, such that no refinery would face DEH from its RFS obligations. After evaluating an extensive amount of data and available information, we continue to conclude that the cost of RINs is the same for all obligated parties, whether the RINs are acquired by blending renewable fuel or by buying them on the market. Hence, small refineries do not face a disproportionate cost of compliance when compared to other refineries, or to each other. Our analysis further shows that the costs of RFS compliance (i.e., RINs) are passed through in the prices of refined products. Hence, in recovering their RIN costs, refineries do not face economic hardship due to compliance with the RFS program. Finding no disproportionate cost of compliance and no economic hardship due to the RFS program, we conclude that small refineries do not face DEH. As such, EPA finds that compliance with the RFS program does not impose DEH on the petitioning small refineries and, accordingly, is denying 26 pending SRE petitions in this final action.

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. This section provides, in part, that petitions for review must be filed only in the United States Court of Appeals for the District of Columbia Circuit: (i) when the agency action consists of "any other nationally applicable…final action taken by the Administrator," or (ii) when a final action is locally or regionally applicable but "such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is

---

[39] EPA Final GAO Response, pp. 2-8.

based on such a determination." The CAA reserves to EPA the complete discretion to decide whether to invoke the exception in (ii) described in the preceding sentence.[40]

This final action is "nationally applicable" within the meaning of CAA section 307(b)(1). Whether an action is "nationally applicable" is a narrow inquiry based only on the "face" of the action.[41] The question is whether the action itself is nationally applicable, not whether the nature and scope of the arguments raised or relief sought by a petitioner challenging the action are nationally applicable.[42] On its face, this final action is nationally applicable because it denies 26 SRE petitions for 15 small refineries across the country located within 14 states in 7 of the 10 EPA regions and in 8 different Federal judicial circuits. This final action is based on EPA's consistent nationwide application of its revised interpretation of the relevant CAA provisions and using its "common, nationwide analytical method" of RIN discount and RIN cost passthrough principles for evaluating *all* SRE petitions, no matter the location or market in which the small refineries operate.[43]

To the extent a court finds this final action to be locally or regionally applicable, the Administrator is exercising the complete discretion afforded to him under the CAA to make and publish a finding that this action is based on a determination of "nationwide scope or effect" within the meaning of CAA section 307(b)(1).[44] In deciding whether to invoke the exception by making and publishing a finding that this final action is based on a determination of nationwide scope or effect, the Administrator has also taken into account a number of policy considerations, including his judgment balancing the benefit of obtaining the D.C. Circuit's authoritative centralized review versus allowing development of the issue in other contexts and the best use of Agency resources. The substance of the Administrator's determination is entitled to deference.[45] In addition to applying a common analytical method, this action decides SRE petitions for 26 small refineries across the country located within 14 states in 7 of the 10 EPA regions and in 8 different Federal judicial circuits. Where, as here, the Administrator "unambiguously determine[s] that [a] final action . . . has nationwide scope and effect" and publishes that finding, "all petitions for review of th[e] action belong in [the D.C.] Circuit" under CAA section

---

[40] *Sierra Club v. EPA*, 47 F.4th 738, 745 (D.C. Cir. 2022) ("EPA's decision whether to make and publish a finding of nationwide scope or effect is committed to the agency's discretion and thus is unreviewable"); *Texas v. EPA*, 983 F.3d 826, 834-35 (5th Cir. 2020).

[41] *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881 (D.C. Cir. 2015).

[42] *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 670-71 (7th Cir. 2017); *ATK Launch Sys., Inc. v. EPA,* 651 F.3d 1194, 1198-1199 (10th Cir. 2011); *RMS of Ga., LLC v. EPA*, 64 F.4th 1368, 1372-1373 (11th Cir. 2023).

[43] *S. Ill. Power*, 863 F.3d at 671; *ATK Launch Sys.,*651 F.3d at 1197.

[44] In the report on the 1977 Amendments that revised section 307(b)(1) of the CAA, Congress noted that the Administrator's determination that the "nationwide scope or effect" exception applies would be appropriate for any action that has a scope or effect beyond a single judicial circuit. See H.R. Rep. No. 95–294 at 323, 324, reprinted in 1977 U.S.C.C.A.N. 1402–03.

[45] The Administrator's determination is akin to other determinations that Congress leaves to an agency's broad discretion, such as the denial of a rulemaking petition, and merits considerable deference. *Cf., e.g.*, *WildEarth Guardians v. EPA*, 751 F.3d 649, 651 (D.C. Cir. 2014) (discussing *Massachusetts v. EPA*, 549 U.S. 497 (2007)); *see also Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543 (1978) (absent constitutional or statutory limitations or otherwise "extremely compelling circumstances," agencies "should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties"); *NAACP v. FPC*, 425 U.S. 662, 668 (1976) (reiterating the "general proposition" that agencies have discretion to determine how to shape their regulatory and adjudicatory actions).

307(b)(1).[46] This outcome promotes the principles underlying CAA section 307(b)(1) and ensures that petitions for review are consolidated in the D.C. Circuit where Congress designated them to be heard, avoiding piecemeal litigation, furthering judicial economy, and eliminating the risk of inconsistent judgments.[47]

For these reasons, this final action is nationally applicable or, alternatively, the Administrator is exercising the complete discretion afforded to him by the CAA and hereby finds that this final action is based on a determination of nationwide scope or effect for purposes of CAA section 307(b)(1) and is hereby publishing that finding in the *Federal Register*.

Under CAA section 307(b)(1), petitions for judicial review of this action must be filed in the United States Court of Appeals for the District of Columbia Circuit within 60 days from the date notice of this final action is published in the *Federal Register*.

This action is not a rulemaking and is not subject to the various statutory and other provisions applicable to a rulemaking. This action is immediately effective upon issuance.

---

[46] *Alcoa, Inc. v. EPA*, No. 04-1189, 2004 WL 2713116, at *1 (D.C. Cir. Nov. 24, 2004); *see also ATK Launch Sys., Inc.*, 651 F.3d at 1199 n.4 (acknowledging *Alcoa*).
[47] *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011).

11

## Appendix A – Updated Market Analysis

In the 2022 SRE Denial Actions, EPA analyzed the available market data to verify the economic principles at work and to verify that the RIN cost and RIN discount are being reflected in the retail price of blended fuel. [48] These analyses confirm that both the *cost* of the RINs—which is reflected in the price for fuel and blendstocks—and the *discount* of the RINs are passed through to wholesale purchasers in the marketplace in the price they pay for blended fuel. For this action, EPA updated its analysis from the 2022 SRE Denial Actions regarding RIN cost passthrough[49] to include the available market data for 2021 and 2022 and again found that the RIN cost per gallon is passed through in the prices of petroleum transportation fuels. EPA used the same analytical approach described in the 2022 SRE Denial Actions.[50] Including the 2021–2022 market data in its analysis, EPA again found a strong correlation between the RIN cost per gallon of petroleum transportation fuel and the price difference in New York Harbor between ultra-low sulfur diesel (ULSD) (which is subject to an RFS obligation) and heating oil (which is essentially identical to ULSD but is not subject to an RFS obligation), as shown in Figures A-1 and 2. EPA found a similar correlation between the RIN cost per gallon of petroleum transportation fuel and the price difference in the U.S. Gulf Coast between ULSD and jet fuel (a non-obligated fuel similar to ULSD, but less so than heating oil), as shown in Figures A-3 and 4. As explained in the 2022 SRE Denial Actions, there is more noise in the data for ULSD vs. jet fuel, but a general relationship between the price difference of these fuels and the RIN cost can be seen. EPA concludes that the 2021–2022 market data continue to reflect the economic principle of RIN cost passthrough.

---

[48] 2022 SRE Denial Actions, Section IV.D.2.d.
[49] 2022 SRE Denial Actions, Section IV.D.2.d.i.
[50] 2022 SRE Denial Actions, Section IV.D.2.d.i.

**Figure A-1: Price Difference Between ULSD and Heating Oil in New York Harbor and RIN Cost (2017–2022)[51]**



**Figure A-2: Correlation Between Price Difference of ULSD and Heating Oil and RIN Cost (2017–2022)**



---

[51] Prices for ULSD and heating oil are reported by EIA and are available at https://www.eia.gov/dnav/pet/pet_pri_spt_s1_d.htm.

**Figure A-3: Price Difference Between ULSD and Jet Fuel in the Gulf Coast and RIN Cost (2017–2022)**[52]



**Figure A-4: Correlation Between Price Difference of ULSD and Jet Fuel and RIN Cost (2017–2022)**[53]



---

[52] Prices for ULSD and jet fuel are reported by EIA and are available at
https://www.eia.gov/dnav/pet/pet_pri_spt_s1_d.htm. Also apparent in Figure A-3 is the impact of the COVID-19 pandemic. In late March 2020, air travel and demand for jet fuel decreased dramatically, resulting in an oversupply of jet fuel and a spike in the price premium for ULSD over jet fuel. Over time, as demand for jet fuel gradually increased and refiners adjusted their production to better match fuel demand, the price difference between jet fuel and ULSD returned to match the RIN cost.
[53] Circled data is for March through May 2020, and reflects the temporary sharp decrease in jet fuel prices due to the COVID-19 pandemic.

14

# Exhibit B

DDP Specialty Electronic Materials US, Inc. (DDP Materials) and MC (US) 3, LLC (MC 3) file the required baseline submission within 15 days of the date of issuance of the April 20 Order or face revocation of their authority to sell power at market-based rates and termination of their electric market-based rate tariffs.[4]

The time period for compliance with the April 20 Order has elapsed. DDP Materials and MC 3 failed to file their delinquent baseline submissions to the market-based rate relational database. The Commission hereby revokes, effective as of the date of issuance of this notice, the market-based rate authority and terminates the electric market-based rate tariffs of DDP Materials and MC 3. This revocation does not preclude DDP Materials and MC 3 from re-applying for market-based rate authority.

Dated: July 14, 2023.

**Debbie-Anne A. Reese,**
*Deputy Secretary.*

[FR Doc. 2023–15422 Filed 7–19–23; 8:45 am]

**BILLING CODE 6717–01–P**

## ENVIRONMENTAL PROTECTION AGENCY

**[FRL–10686–01–OAR]**

## Notice of July 2023 Denial of Petitions for Small Refinery Exemptions Under the Renewable Fuel Standard Program

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Denial of petitions.

**SUMMARY:** The Environmental Protection Agency (EPA) is providing notice of its final action entitled July 2023 Denial of Petitions for RFS Small Refinery Exemptions ("July 2023 SRE Denial Action") in which EPA denied 26 small refinery exemption (SRE) petitions under the Renewable Fuel Standard (RFS) program. EPA is providing this notice for public awareness of, and the basis for, EPA's decision announced on July 14, 2023.

**DATES:** July 20, 2023.

**FOR FURTHER INFORMATION CONTACT:** Benjamin Sarver, Office of Transportation and Air Quality, Compliance Division, Environmental Protection Agency, 1200 Pennsylvania Avenue NW, Washington, DC 20004; telephone number: 202–564–1881; email address: sarver.benjamin@epa.gov.

**SUPPLEMENTARY INFORMATION:**

## I. Background

The Clean Air Act (CAA) provides that a small refinery[1] may at any time petition EPA for an extension of the exemption from the obligations of the RFS program for the reason of disproportionate economic hardship (DEH).[2] In evaluating such petitions, the EPA Administrator, in consultation with the Secretary of Energy, will consider the findings of a Department of Energy (DOE) study and other economic factors.[3]

## II. Decision

The July 2023 SRE Denial Action[4] relies on the same approach and the same analyses described in the April 2022 SRE Denial Action[5] and the June 2022 SRE Denial Action.[6] In those actions, we conducted an extensive analysis and review of information provided to EPA by small refineries in their SRE petitions and we found that all refineries face the same costs to acquire RINs regardless of whether the RINs are created through the act of blending renewable fuels or are purchased on the open market. This happens because the market price for these fuels increases to reflect the cost of the RIN, much as it would increase in response to higher crude prices. In other words, this increased price for gasoline and diesel fuel allows obligated parties to recover their RIN costs through the market price of the fuel they produce. Because the market behaves this way for all parties subject to the RFS program, there is no disproportionate cost to any party, including small refineries, and no hardship given that the costs are recovered. As a result, we continue to conclude that small refineries do not face DEH. Given this conclusion and the other reasons described in the July 2023 SRE Denial Action, we have denied 26 SRE petitions for the 2016–2018 and 2021–2023 compliance years by finding the petitioning small refineries do not face DEH caused by compliance with their RFS obligations.

## III. Judicial Review

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. This section provides, in part, that petitions for review must be filed only in the United States Court of Appeals for the District of Columbia Circuit: (i) when the agency action consists of "any other nationally applicable . . . final action taken by the Administrator," or (ii) when a final action is locally or regionally applicable but "such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." The CAA reserves to EPA the complete discretion to decide whether to invoke the exception in (ii) described in the preceding sentence.[7]

This final action is "nationally applicable" within the meaning of CAA section 307(b)(1). Whether an action is "nationally applicable" is a narrow inquiry based only on the "face" of the action.[8] The question is whether the action itself is nationally applicable, not whether the nature and scope of the arguments raised or relief sought by a petitioner challenging the action are nationally applicable.[9] On its face, this final action is nationally applicable because it denies 26 SRE petitions for 15 small refineries across the country located within 14 states in 7 of the 10 EPA regions and in 8 different Federal judicial circuits. This final action is based on EPA's consistent nationwide application of its revised interpretation of the relevant CAA provisions and using its "common, nationwide analytical method" of RIN discount and RIN cost passthrough principles for evaluating all SRE petitions, no matter the location or market in which the small refineries operate.[10]

To the extent a court finds this final action to be locally or regionally applicable, the Administrator is exercising the complete discretion afforded to him under the CAA to make and publish a finding that this action is based on a determination of "nationwide scope or effect" within the

---

[4] April 20 Order, 183 FERC ¶ 61,027 at Ordering Paragraph A.

[1] The CAA defines a small refinery as "a refinery for which the average aggregate daily crude oil throughput for a calendar year . . . does not exceed 75,000 barrels." CAA section 211(*o*)(1)(K).

[2] CAA section 211(*o*)(9)(B)(i).

[3] CAA section 211(*o*)(9)(B)(ii).

[4] "July 2023 Denial of Petitions for RFS Small Refinery Exemptions," EPA–420–R–23–007, July 2023.

[5] "April 2022 Denial of Petitions for RFS Small Refinery Exemptions," EPA–420–R–22–005, April 2022.

[6] "June 2022 Denial of Petitions for RFS Small Refinery Exemptions," EPA–420–R–22–011, June 2022.

[7] *Sierra Club* v. *EPA,* 47 F.4th 738, 745 (D.C. Cir. 2022) ("EPA's decision whether to make and publish a finding of nationwide scope or effect is committed to the agency's discretion and thus is unreviewable"); *Texas* v. *EPA,* 983 F.3d 826, 834–35 (5th Cir. 2020).

[8] *Dalton Trucking, Inc.* v. *EPA,* 808 F.3d 875, 881 (D.C. Cir. 2015).

[9] *S. Ill. Power Coop.* v. *EPA,* 863 F.3d 666, 670–71 (7th Cir. 2017); *ATK Launch Sys., Inc.* v. *EPA,* 651 F.3d 1194, 1198–1199 (10th Cir. 2011); *RMS of Ga., LLC* v. *EPA,* 64 F.4th 1368, 1372–1373 (11th Cir. 2023).

[10] *S. Ill. Power,* 863 F.3d at 671; *ATK Launch Sys.,* 651 F.3d at 1197.

meaning of CAA section 307(b)(1).[11] In deciding whether to invoke the exception by making and publishing a finding that this final action is based on a determination of nationwide scope or effect, the Administrator has also taken into account a number of policy considerations, including his judgment balancing the benefit of obtaining the D.C. Circuit's authoritative centralized review versus allowing development of the issue in other contexts and the best use of Agency resources. The substance of the Administrator's determination is entitled to deference.[12] In addition to applying a common analytical method, this action decides SRE petitions for 26 small refineries across the country located within 14 states in 7 of the 10 EPA regions and in 8 different Federal judicial circuits. Where, as here, the Administrator "unambiguously determine[s] that [a] final action . . . has nationwide scope and effect" and publishes that finding, "all petitions for review of th[e] action belong in [the DC] Circuit" under CAA section 307(b)(1).[13] This outcome promotes the principles underlying CAA section 307(b)(1) and ensures that petitions for review are consolidated in the D.C. Circuit where Congress designated them to be heard, avoiding piecemeal litigation, furthering judicial economy, and eliminating the risk of inconsistent judgments.[14]

For these reasons, this final action is nationally applicable or, alternatively, the Administrator is exercising the complete discretion afforded to him by the CAA and hereby finds that this final action is based on a determination of nationwide scope or effect for purposes of CAA section 307(b)(1) and is hereby publishing that finding in the **Federal Register**.

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the District of Columbia Circuit by September 18, 2023.

**Alejandra Nunez,**
*Deputy Assistant Administrator for Mobile Sources, Office of Air and Radiation.*
[FR Doc. 2023–15401 Filed 7–19–23; 8:45 am]
**BILLING CODE 6560–50–P**

---

## EXPORT-IMPORT BANK OF THE UNITED STATES

**[Public Notice: EIB–2023–0007]**

### Application for Final Commitment for a Long-Term Loan or Financial Guarantee in Excess of $100 Million: AP089448XB

**AGENCY:** Export-Import Bank of the United States.

**ACTION:** Notice.

**SUMMARY:** This Notice is to inform the public the Export-Import Bank of the United States ("EXIM") has received an application for final commitment for a long-term loan or financial guarantee in excess of $100 million. Comments received within the comment period specified below will be presented to the EXIM Board of Directors prior to final action on this Transaction.

**DATES:** Comments must be received on or before August 14, 2023 to be assured of consideration before final consideration of the transaction by the Board of Directors of EXIM.

**ADDRESSES:** Comments may be submitted through *Regulations.gov* at *WWW.REGULATIONS.GOV.* To submit a comment, enter EIB–2023–0007 under the heading "Enter Keyword or ID" and select Search. Follow the instructions provided at the Submit a Comment screen. Please include your name, company name (if any) and EIB–2023–0007 on any attached document.

**SUPPLEMENTARY INFORMATION:**
*Reference:* AP089448XB

*Purpose and Use:* Brief description of the purpose of the transaction: To support the export of U.S.-manufactured commercial aircraft to South Korea.

Brief non-proprietary description of the anticipated use of the item being exported: To be used for passenger air transport between South Korea and other countries within Asia.

To the extent that EXIM is reasonably aware, the item being exported is not expected to produce exports or provide services in competition with the exportation of goods or provision of services by a United States industry.

*Parties:*
*Principal Supplier:* The Boeing Company.
*Obligor:* Korean Air Lines Co., Ltd.
*Guarantor(s):* N/A.
*Description of Item Being Exported:* Boeing commercial jet aircraft.
*Information on Decision:* Information on the final decision for this transaction will be available in the "Summary Minutes of Meetings of Board of Directors" on *https://www.exim.gov/news/meeting-minutes.*
*Confidential Information:* Please note that this notice does not include confidential or proprietary business information; information which, if disclosed, would violate the Trade Secrets Act; or information which would jeopardize jobs in the United States by supplying information that competitors could use to compete with companies in the United States.
*Authority:* Section 3(c)(10) of the Export-Import Bank Act of 1945, as amended (12 U.S.C. 635a(c)(10)).

**Joyce B. Stone,**
*Assistant Corporate Secretary.*
[FR Doc. 2023–15380 Filed 7–19–23; 8:45 am]
**BILLING CODE 6690–01–P**

---

## FEDERAL COMMUNICATIONS COMMISSION

**[OMB 3060–1170; FR ID 156257]**

### Information Collection Being Reviewed by the Federal Communications Commission Under Delegated Authority

**AGENCY:** Federal Communications Commission.

**ACTION:** Notice and request for comments.

**SUMMARY:** As part of its continuing effort to reduce paperwork burdens, and as required by the Paperwork Reduction Act of 1995 (PRA), the Federal Communications Commission (FCC or Commission) invites the general public and other Federal agencies to take this opportunity to comment on the following information collections. Comments are requested concerning: whether the proposed collection of information is necessary for the proper performance of the functions of the Commission, including whether the information shall have practical utility; the accuracy of the Commission's burden estimate; ways to enhance the quality, utility, and clarity of the

---

[11] In the report on the 1977 Amendments that revised section 307(b)(1) of the CAA, Congress noted that the Administrator's determination that the "nationwide scope or effect" exception applies would be appropriate for any action that has a scope or effect beyond a single judicial circuit. See H.R. Rep. No. 95–294 at 323, 324, reprinted in 1977 U.S.C.C.A.N. 1402–03.

[12] The Administrator's determination is akin to other determinations that Congress leaves to an agency's broad discretion, such as the denial of a rulemaking petition, and merits considerable deference. *Cf., e.g., WildEarth Guardians* v. *EPA,* 751 F.3d 649, 651 (D.C. Cir. 2014) (discussing *Massachusetts* v. *EPA,* 549 U.S. 497 (2007)); *see also Vermont Yankee Nuclear Power Corp.* v. *NRDC,* 435 U.S. 519, 543 (1978) (absent constitutional or statutory limitations or otherwise "extremely compelling circumstances," agencies "should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties"); *NAACP* v. *FPC,* 425 U.S. 662, 668 (1976) (reiterating the "general proposition" that agencies have discretion to determine how to shape their regulatory and adjudicatory actions).

[13] *Alcoa, Inc.* v. *EPA,* No. 04–1189, 2004 WL 2713116, at *1 (D.C. Cir. Nov. 24, 2004); *see also ATK Launch Sys., Inc.,* 651 F.3d at 1199 n.4 (acknowledging *Alcoa*).

[14] *Texas* v. *EPA,* No. 10–60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011).

# EXHIBIT C

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN REFINING GROUP, INC.,

          Petitioner,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

          Respondent.

Case No. _____

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioner American Refining Group, Inc. provides the following corporate disclosure statement:

**American Refining Group, Inc.** is incorporated under the laws of Pennsylvania. American Refining Group, Inc. is a refiner of petroleum products. American Refining Group, Inc. has no parent company, and no publicly held company has a 10 percent or greater ownership interest in it.

Petitioner will file a revised corporate disclosure statement should it become aware of a change in corporate ownership interests that would affect the disclosures required by Rule 26.1.

Dated:  September 12, 2023

Respectfully submitted,

*s/ Jonathan G. Hardin*

Jonathan G. Hardin
Alexandra Magill Bromer
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C.  20005-3960
Telephone:  202.654.6297
Facsimile:  202.654.6211
JHardin@perkinscoie.com
ABromer@perkinscoie.com

Michael R. Huston*
Karl J. Worsham
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85102-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
MHuston@perkinscoie.com
KWorsham@perkinscoie.com
* *Admitted only in Washington, D.C.*

Attorneys for American Refining Group, Inc.

2

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 3(d), 15(c) and 25, D.C. Circuit Rules 15(a) and 25, and 40 C.F.R. § 23.12(a), I hereby certify that on September 12, 2023, I will cause copies of the foregoing Petition for Review to be served by certified mail, return receipt requested upon the following:

HON. MICHAEL S. REGAN, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

CORRESPONDENCE CONTROL UNIT
Office of General Counsel (2311)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

HON. MERRICK GARLAND
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

HON. TODD SUNHWAE KIM
Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dated:  September 12, 2023

 *s/ Jonathan G. Hardin*
Jonathan G. Hardin
PERKINS COIE LLP